# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| AVERY E. LEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 22-319 (RBW) |
| v. | ) | |
| | ) | |
| DENIS R. MCDONOUGH, Secretary of | ) | |
| Veterans Affairs, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

The plaintiff, Avery E. Lee, proceeding pro se, brings this civil action against the

defendant, Dennis R. McDonough, in his official capacity as the Secretary of the United States

Department of Veterans Affairs, asserting the following claims: (1) discrimination and retaliation

in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112, see Complaint

("Compl.") ¶¶ 38, 41–45, ECF No. 1; (2) discrimination and the creation of a hostile work

environment based on his race, and retaliation in violation of Title VII of the Civil Rights Act of

1964 ("Title VII"), 42 U.S.C. § 2000e, see id. ¶¶ 32–35, 39–40; (3) discrimination and retaliation

in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §

633a(a), see id. ¶¶ 36–37; (4) discrimination based on his race, age, and disability, and retaliation

in violation of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, see id. ¶¶ 46–51; and (5)

discrimination based on his race, age, and disability in violation of the District of Columbia

Human Rights Act ("DCHRA"), D.C. Code § 2-1401.01, see id. ¶¶ 52–54.  Currently pending

before the Court is the Defendant's Motion to Dismiss ("Def.'s Mot."), ECF No. 16, pursuant to

Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Upon careful consideration of the

parties' submissions,[1] the Court concludes for the following reasons that it must grant the defendant's motion.

## I.   BACKGROUND

### A.   Factual Background

The following allegations are derived from the plaintiff's Complaint, unless otherwise specified.  The plaintiff is a "black[,] [sixty-five] year-old disabled [v]eteran" who "is [currently] employed as a [p]ainter . . . at the Veterans Affairs Medical Center [located in the District of Columbia.]"  Compl. ¶¶ 1–2.  "The [p]laintiff was hired by [the] Veterans Affairs Medical Center ('VA Hospital') . . . on May 13, 2019," id. ¶ 20, where he alleges he was discriminated against on the basis of his race, age, and disability, see id. ¶¶ 8–10.  The plaintiff further alleges that the defendant "retaliated against [him] because he complained to management."  Id. ¶ 11.

More specifically, the plaintiff alleges that Timothy Gustafson—viz., the plaintiff's team leader—"embarked on a campaign to use his team leader position to discriminate, harass, annoy, and embarrass the [p]laintiff because the [p]laintiff is an elderly, disabled black male."  Id. ¶ 24.  Gustafson allegedly "made persistent negative comments about [the plaintiff] being too 'slow' when working and how [Gustafson] could do [the work] better and faster."  Id.  Gustafson also allegedly told the plaintiff that he did not "deserve to be paid for the day."  Id.  Furthermore, Gustafson allegedly "referenced [the plaintiff's] age in a memo dated April 9, 2021, stating that 'I have been hanging drywall, finishing drywall, painting, and more since I was a [t]eenager[.]  I am 47 years of age.'"  Id. ¶ 25.  Finally, Gustafson allegedly "took [the p]laintiff to various

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion to Dismiss ("Pl.'s Opp'n"), ECF No. 19; and (2) the Reply in Further Support of Defendant's Motion to Dismiss ("Def.'s Reply"), ECF No. 20.

locations and said to [him:] '[L]ook what I have done, you need to speed up on your work.  You [do not] deserve to be paid $200[ ] for the day.'"  Id.  ¶ 26.

The plaintiff further alleges that "favoritism was shown toward" "Bradley Maguire, a [white younger male,] who was hired after [the plaintiff][.]"  Id., Exhibit ("Ex.") 1 (Equal Employment Opportunity Commission Appeal Brief, filed July 14, 2021 ("EEOC Appellate Brief")) at 29, ECF No. 1-1.  More specifically, the plaintiff alleges that, unlike Maguire, he "was excluded in the decision making for new hires [and] was never given an opportunity to participate in the interviewing and hiring process for new applicants, which is age and racial discrimination."  Id., Ex. 1 (EEOC Appellate Brief) at 29.  Furthermore, Maguire was allegedly left "in charge" on several occasions when the plaintiff's supervisor was away, id., Ex. 1 (EEOC Appellate Brief) at 29, and was "treated more favorabl[y]" than the plaintiff, id., Ex. 1 (EEOC Appellate Brief) at 31.

The plaintiff also alleges that he was subjected to a "hostile work environment" when another employee, Renee Jefferson, placed "hostile postings . . . outside [her] office door[,]" which he reported to management  Id., Ex. 1 (EEOC Appellate Brief) at 30.  Moreover, the plaintiff allegedly informed management that his "feet were in severe pain caused by worn work boots" and that he "had ordered new boots from [ ] Jefferson in May of 2020[,] but had not received them."  Id., Ex. 1 (EEOC Appellate Brief) at 30.  Finally, the plaintiff alleges that on September 28, 2020, he was called into Jefferson's office, where she allegedly "stated in a very harsh tone[:] '[D]idn't I tell you I was going to order the shirts!'"  Id., Ex. 1 (EEOC Appellate Brief) at 30.  The plaintiff contends that he "allowed her to finish speaking and immediately left her office with no response."  Id., Ex. 1 (EEOC Appellate Brief) at 30.

The plaintiff filed a formal EEO complaint on April 18, 2021, alleging "age" and "race" discrimination. Id., Ex. 1 (Initial EEOC Complaint of Employment Discrimination, filed Apr. 18, 2021) at 11–12. On June 16, 2021, the EEOC issued an agency decision dismissing the plaintiff's "complaint of unlawful employment discrimination in violation of Title VII . . . and the Age Discrimination in Employment Act of 1967[.]" Id., Ex. 1 (EEOC Appeal Decision, filed Nov. 4, 2021) at 1. The plaintiff then appealed to the EEOC's Office of Federal Operations, and that office affirmed the agency's dismissal on November 4, 2021. Id., Ex. 1 (EEOC Appeal Decision, filed Nov. 4, 2021) at 1.

**B.      Procedural Background**

The plaintiff filed his Complaint in this case on February 7, 2022. See Compl. at 1. On October 24, 2022, the defendant filed his motion to dismiss. See Def.'s Mot. at 1. In response, the plaintiff filed his opposition on December 12, 2022, see Pl.'s Opp'n at 1, and the defendant filed his reply in support of his motion on December 19, 2022, see Def.'s Reply at 1.

## II.      STANDARDS OF REVIEW

**A.      Rule 12(b)(1)**

"Federal courts are courts of limited jurisdiction[,]" Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994), and "[a] motion for dismissal under [Federal Rule of Civil Procedure] 12(b)(1) 'presents a threshold challenge to the [C]ourt's jurisdiction[,]'" Morrow v. United States, 723 F. Supp. 2d 71, 75 (D.D.C. 2010) (Walton, J.) (quoting Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987)). Thus, the Court is obligated to dismiss a claim if it "lack[s] . . . subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Because "[i]t is to be presumed that a cause lies outside [the Court's] limited jurisdiction," Kokkonen, 511 U.S. at 377, the plaintiff

bears the burden of establishing that the Court has subject-matter jurisdiction, see Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992).

"In deciding a [Rule] 12(b)(1) motion, the [C]ourt need not limit itself to the allegations of the complaint." Grand Lodge of the Fraternal Ord. of Police v. Ashcroft, 185 F. Supp. 2d 9, 14 (D.D.C. 2001). Rather, the "[C]ourt may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case." Scolaro v. D.C. Bd. of Elections & Ethics, 104 F. Supp. 2d 18, 22 (D.D.C. 2000); see Jerome Stevens Pharms., Inc. v. Food & Drug Admin., 402 F.3d 1249, 1253 (D.C. Cir. 2005). Additionally, the Court must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting [the] plaintiff the benefit of all inferences that can be derived from the facts alleged[.]'" Am. Nat'l Ins. Co. v. Fed. Deposit Ins. Corp., 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting Thomas v. Principi, 394 F.3d 970, 972 (D.C. Cir. 2005)). However, "the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a [Rule] 12(b)(1) motion than in resolving a [Rule] 12(b)(6) motion for failure to state a claim." Grand Lodge, 185 F. Supp. 2d at 13–14 (first and second alterations in original) (internal quotation marks omitted) (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (2d ed. 1990)).

**B.     Rule 12(b)(6)**

A Rule 12(b)(6) motion tests whether a complaint "state[s] a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads

factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

In evaluating a motion to dismiss under Rule 12(b)(6), "the Court must construe the complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." Hettinga v. United States, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks omitted) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)).  While the Court must "assume [the] veracity" of any "well-pleaded factual allegations" in a complaint, conclusory allegations "are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679.  Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S. at 555).  Also, the Court need not "accept legal conclusions cast as factual allegations[,]" or "inferences drawn by [the] plaintiff if those inferences are not supported by the facts set out in the complaint[.]" Hettinga, 677 F.3d at 476.  Finally, the Court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] and matters of which [the Court] may take judicial notice." Equal Emp. Opportunity Comm'n v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).

In conducting the above analyses, the Court is mindful of the fact that the plaintiff is proceeding in this matter pro se.  This appreciation is required because the pleadings of pro se parties are "to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).  Furthermore, all factual allegations by a pro se litigant, whether contained in the complaint or other filings in the matter, should be read together in

considering whether to grant a dispositive motion.  See Richardson v. United States, 193 F.3d

545, 548 (D.C. Cir. 1999).  However, just like parties represented by attorneys, a pro se litigant

"must comply with the Federal Rules of Civil Procedure and this Court's local rules[.]"  Hedrick

v. Fed. Bureau of Investigation, 216 F. Supp. 3d 84, 93 (D.D.C. 2016) (citations omitted); see

McNeil v. United States, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural

rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who

proceed without counsel.").

### III.    ANALYSIS

The defendant asserts that the "[p]laintiff's Complaint suffers from numerous fatal

defects."  Def.'s Mot. at 5.  First, the defendant claims that the plaintiff's "disability

discrimination and retaliation claims [under the Rehabilitation Act]" "must be dismissed because

they were not properly exhausted at the administrative level[.]"  Id.  Furthermore, the defendant

argues that the plaintiff's "discriminatory disparate treatment claims also fail because [the

p]laintiff has not established that he is challenging any action that is subject to redress under the

relevant antidiscrimination statutes or, even if he was, that his protected status had anything to do

with the conduct he challenges."  Id.  The defendant also asserts that the plaintiff's "hostile work

environment claim fails because he does not allege facts demonstrating that his employer

subjected him to discriminatory intimidation, ridicule, and insult that is sufficiently severe or

pervasive to alter the conditions of his employment and create an abusive working environment

or any facts demonstrating that his treatment had anything to do with his protected statuses."  Id.

at 5–6.  Finally, the defendant states that the plaintiff's § 1981a and DCHRA claims "are [ ] not

cognizable."  Id. at 5.  More specifically, the defendant claims that the plaintiff's § 1981a claims

"must be dismissed because that statute does not provide a private cause of action that [the

p]laintiff may pursue[,]" and his DCHRA claims "cannot be asserted against a federal employer, like the one here, because the federal government has not waived its sovereign immunity to such claims." Id.

In response, the plaintiff claims that he "has properly exhausted his administrative remedies, and thus [the] Defendant's Motion to Dismiss should be denied" on that basis. Pl.'s Opp'n at 13. Furthermore, with respect to his disparate treatment claims, the plaintiff asserts that the "[d]efendant overlooks [that the p]laintiff properly asserted as an African American, sixty-five-year-old-male, [that] he has been subjected to disparate treatment by being undesired [as compared to] members of a non-protected class." Id. at 17. Finally, the plaintiff argues that he "has plead sufficient supporting facts to illustrate a[ hostile work] environment that goes beyond ordinary workplace circumstances." Id. at 19. The Court will first consider the plaintiff's ADA claims, before turning to his Title VII and ADEA claims. Then, the Court will address the plaintiff's § 1981a and DCHRA claims.

**A.      Whether the Plaintiff Has Stated a Rehabilitation Act Claim**

**1.  Whether the Plaintiff was Required to Bring His Disability Claims Under the Rehabilitation Act**

As an initial matter, the Court notes that the plaintiff brings his disability claim under the ADA. See Compl. ¶ 4. "However, the 'ADA does not apply to employees of the federal government because the federal government is not considered an employer under the ADA.'" Ahmed v. Napolitano, 825 F. Supp. 2d 112, 115 (D.D.C. 2011) (quoting Klute v. Shinseki, 797 F. Supp. 2d 12, 17 (D.D.C. 2011) (Walton, J.)); see 42 U.S.C. § 12111(5)(B)(i) (excluding "the United States" from the definition of "employer"). Instead, the Rehabilitation Act "is the exclusive remedy for federal employees alleging disability discrimination by a federal agency." Raines v. U.S. Dep't of Just., 424 F. Supp. 2d 60, 65 (D.D.C. 2006).

The plaintiff admits that he is an employee of the Department of Veterans Affairs, a federal government agency.  See Compl. ¶ 2 ("The plaintiff is employed as a Painter . . . at the Veterans Affairs Medical Center[.]").  Accordingly, the Rehabilitation Act—not the ADA—"is the exclusive remedy for [his claims] alleging disability discrimination by [the] federal agency." Raines, 424 F. Supp. 2d at 65.  However, the Court concludes "that because [c]ourts must construe pro se filings liberally, . . . and because the [d]efendant[] will not be prejudiced by reading the Complaint as bringing a disability claim under the Rehabilitation Act as opposed to the ADA, the Court will construe [the plaintiff's] claims as brought under the Rehabilitation Act."  Welsh v. Hagler, 83 F. Supp. 3d 212, 216–17 (D.D.C. 2015) (first alteration in original) (internal quotation marks and citations omitted) (quoting Richardson, 193 F.3d at 548).

## 2.  Whether the Plaintiff Has Exhausted His Rehabilitation Act Claims

Next, the Court will address whether the plaintiff has administratively exhausted what the Court construes as his Rehabilitation Act claims—viz., his disability discrimination and retaliation claims.  The defendant contends that the plaintiff's disability discrimination and retaliation claims "are unexhausted and must be dismissed" because they "were never asserted in [the p]laintiff's original EEO complaint[.]"  Def.'s Mot. at 7.  More specifically, the defendant claims that in the plaintiff's EEO complaint, he "asserted only two bases of alleged discrimination: age and race.  But in this action, [the p]laintiff not only seeks to assert claims of discrimination on the basis of age and race, but also claims of disability discrimination and reprisal."  Id. (internal citation omitted).  In response, the plaintiff asserts that "he clearly alleged a [Title VII] hostile work environment and discriminatory discipline [claim] to which the [C]ourt may look . . . [when] evaluating his [Rehabilitation Act] claim[s.]"  Pl.'s Opp'n at 13. Furthermore, the plaintiff contends that he "submitted information concerning" his disability and

retaliation claims to the EEOC as part of his appeal of the EEOC's initial June 16, 2021 decision.
Id.

"A plaintiff may file a Rehabilitation Act action in federal court only after exhausting
[his] administrative remedies before the relevant federal agency for each allegedly
discriminatory act." Reagan-Diaz v. Sessions, 246 F. Supp. 3d 325, 345 (D.D.C. 2017), aff'd
sub nom., Reagan-Diaz v. Whitaker, 748 F. App'x 353 (D.C. Cir. 2019). "Under the
Rehabilitation Act, a failure to exhaust administrative remedies is a jurisdictional defect,
requiring dismissal for lack of subject-matter jurisdiction under Rule 12(b)(1), because there
would not be 'any reviewable final administrative action at all.'" Id. (quoting Doak v. Johnson,
798 F.3d 1096, 1104 (D.C. Cir. 2015)). "Since exhaustion of Rehabilitation Act claims is a
jurisdictional requirement, the plaintiff has the burden to plead and prove it." Id.

"A plaintiff fails to exhaust [his] administrative remedies when the complaint [he] files in
federal court includes a claim that was not raised in the administrative complaint." Latson v.
Holder, 82 F. Supp. 3d 377, 384 (D.D.C. 2015) (quoting Mogenhan v. Shinseki, 630 F. Supp. 2d
56, 60 (D.D.C. 2009)). "This exhaustion requirement is not a 'mere technicality,' but 'serves the
important purposes of giving the charged party notice of the claim and narrow[ing] the issues for
prompt adjudication and decision.'" Id. (alteration in original) (quoting Park v. Howard Univ.,
71 F.3d 904, 907 (D.C. Cir. 1995)). Indeed, as the District of Columbia Circuit has emphasized,
"[a]llowing a complaint to encompass allegations outside the ambit of the predicate EEOC
charge would circumvent the EEOC's investigatory and conciliatory role, as well as deprive the
charged party of notice of the charge, as surely as would an initial failure to file a timely EEOC
charge." Marshall v. Fed. Express Corp., 130 F.3d 1095, 1098 (D.C. Cir. 1997).

Here, the Court concludes that the plaintiff has not exhausted his Rehabilitation Act claims.  First, with respect to the plaintiff's disability discrimination claim, the plaintiff contends that his Title VII "hostile work environment and discriminatory discipline" allegations may be looked at as "collective instances" supporting his disability claim.  Pl.'s Opp'n at 13.  However, "allegations of <u>other</u> types of discrimination are insufficient to exhaust [the plaintiff's] disability claims, even if they are grounded in the same or similar facts."  <u>Jones v. U.S. Dep't of Veterans Affs.</u>, No. 15-cv-1384 (TJK), 2019 WL 4673570, at *10 (D.D.C. Sept. 25, 2019).  "And [the] plaintiff's failure to [otherwise] include disability discrimination or retaliation claims in [his] EEO complaint is equivalent to the 'wholesale failure' to file a complaint on those claims."  <u>Id.</u> (quoting <u>McIver v. Mattis</u>, 318 F. Supp. 3d 245, 251 (D.D.C. 2018)); <u>see generally</u> Compl., Ex. 1 (Initial EEOC Complaint of Employment Discrimination) at 11–12 (alleging only age and race discrimination).

Of course, the Court acknowledges that the plaintiff did attempt to raise a disability discrimination claim in his appeal of the EEOC's initial June 16, 2021 decision.  <u>See</u> Compl., Ex. 1 (EEOC Appellate Brief) at 29–30.  But, in the EEOC's decision dismissing the plaintiff's appeal, the agency explicitly noted that "it [was] not appropriate for [the] complainant to raise new claims for the first time on appeal.  Should he wish to pursue <u>his disability discrimination claim</u>, [the c]omplainant is advised to contact an EEO Counselor to initiate the EEO process." <u>Id.</u>, Ex. 1 (EEOC Appeal Decision, filed Nov. 4, 2021) at 2 (internal citation omitted) (emphasis added); <u>see also</u> 29 C.F.R. § 1614.106(d) ("A complainant may amend a complaint at <u>any time prior to the conclusion of the investigation</u> to include issues or claims like or related to those raised in the complaint." (emphasis added)).  The plaintiff has not shown that he did what the EEOC appeal decision advised him to do, and therefore his disability discrimination claim was

not sufficiently exhausted, as the EEOC was not given "an opportunity to handle [the] matter[]

internally."  Niskey v. Kelly, 859 F.3d 1, 7 (D.C. Cir. 2017).

      With respect to the plaintiff's retaliation claim under the Rehabilitation Act, the plaintiff

similarly failed to exhaust that claim.  In his initial EEO complaint, the plaintiff did not "allege

that he experienced . . . retaliation based on complaints of disability discrimination."  Jones, 2019

WL 4673570, at *10.  Indeed, there are simply no facts alleged in the initial EEO complaint to

infer that the plaintiff was retaliated against based on complaints he made of disability

discrimination.  See generally Compl., Ex. 1 (Initial EEOC Complaint of Employment

Discrimination) at 11–12.  Accordingly, "[t]he Court finds that [the plaintiff's Rehabilitation

Act] claims have not been exhausted and that, as a result, they must be dismissed for lack of

subject-matter jurisdiction."  Jones, 2019 WL 4673570, at *10.

**B.**      **Whether the Plaintiff Has Stated a Title VII Claim**

      In his EEO Complaint, the plaintiff alleged the following five instances of racial

discrimination and retaliation in violation of Title VII: (1) In May 2020, the plaintiff ordered new

work boots, which he had not received as of February 16, 2021; (2) On September 28, 2020,

Jefferson told the plaintiff "in a very harsh tone, 'didn't I tell you I was going to order the

shirts!'" after he inquired into the status of missing workplace apparel; (3) Jefferson maintained

hostile postings on her door, which the plaintiff reported on February 9, 2021; (4) On April 1,

2021, Gustafson took the plaintiff "to various locations and said 'look what I have done, you

need to speed up on your work.  You don't deserve to be paid $200.00 for the day[;]'" and (5)

On April 9, 2021, the plaintiff received an email from Gustafson in which he stated "I have been

hanging drywall, finishing drywall, painting, and more since I was a [t]eenager[.]  I am 47 years

of age.  I know my job, I know how to get things done correctly, I am capable of getting things

done quickly, and I know how long things should take to get done."  Compl., Ex. 1 (Initial

EEOC Complaint of Employment Discrimination) at 12.  The plaintiff claims that these "tangible

adverse employment actions" constitute the basis for his Title VII discrimination, hostile work

environment, and retaliation claims.  See generally Compl.  The Court will examine each claim

in turn.

### 1.   Whether the Plaintiff Has Stated a Claim for Discrimination Under Title VII

The defendant contends that the plaintiff's Title VII "discrimination claim[] [ ] fail[s]

because there is no basis upon which to conclude that any action was taken against him on the

basis of race[.]"  Def.'s Mot. at 11.  More specifically, the defendant claims that "there is nothing

in the Complaint from which one could conclude that any of the actions [the p]laintiff challenges

had any connection with [the p]laintiff's race[.]"  Id.  In response, the plaintiff argues that the

defendant "overlooks [that the p]laintiff properly asserted as an African American, sixty-five-

year-old male, [that] he has been subjected to disparate treatment by being undesired [as

compared to] members of a non-protected class."  Pl.'s Opp'n at 17.

Title VII of the Civil Rights Act of 1964 states that "[i]t shall be an unlawful employment

practice for an employer to . . . discriminate against any individual with respect to his

compensation, terms, conditions, or privileges of employment, because of such individual's race,

color, religion, sex, or national origin . . . ."  42 U.S.C. § 2000e-2(a)(1).  A plaintiff alleging

discrimination under Title VII must therefore show that "(i) [he] suffered an adverse

employment action (ii) because of [his] race, color, religion, sex, [or] national origin[.]"  Baloch

v. Kempthorne, 550 F.3d 1191, 1196 (D.C. Cir. 2008) (citing 42 U.S.C. § 2000e-16(a)).

In Chambers v. District of Columbia, 35 F.4th 870, 872 (D.C. Cir. 2022), this Circuit

ruled that an adverse employment action is one that alters the "terms, conditions, or privileges of

employment."  The phrase "terms, conditions, or privileges of employment" is intentionally

broad because it "evinces a congressional intent 'to strike at the entire spectrum of disparate treatment of men and women' in employment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 64 (1986)).  Accordingly, a plaintiff must plead that an alleged adverse employment action "gives rise to an inference of discrimination."  Walker v. Johnson, 798 F.3d 1085, 1091 (D.C. Cir. 2015).

Here, the Court need not decide whether the treatment the plaintiff claims he was subjected to constitute adverse employment actions, because even if the alleged conduct altered the plaintiff's "terms, conditions, or privileges of employment," Chambers, 35 F.4th at 876, his Title VII discrimination claim still fails because he does not plausibly allege that the alleged discrimination was "because of [his] race, color, religion, sex, [or] national origin[.]"  Baloch, 550 F.3d at 1196 (citing 42 U.S.C. § 2000e-16(a)).  Indeed, under "the pleading standard [for a Title VII discrimination claim], [the p]laintiff [is] required to provide sufficient factual allegations to support a plausible inference of race discrimination."  Harris v. Mayorkas, No. 21-cv-1083 (GMH), 2022 WL 3452316, at *6 (D.D.C. Aug. 18, 2022).  Here, the plaintiff's Complaint is "devoid of any such factual material.  Although [he] alleges that [he] was repeatedly mistreated by [his] supervisors, there are no facts alleged from which it can be plausibly inferred that the mistreatment was racially motivated."  Id. (internal citation omitted).  Although the plaintiff identifies five instances of alleged mistreatment, he fails to connect any of those events to his race.  In other words, "[n]one of the events described in the plaintiff's [initial EEO] complaint have any racial . . . overtones.  They are completely neutral with regard to [the plaintiff's] protected classifications."  Bryant v. Brownlee, 265 F. Supp. 2d 52, 64 (D.D.C. 2003).  Thus, these allegations are insufficient to survive a motion to dismiss because they do not

"give[] rise to an inference of discrimination."[2]  Walker, 798 F.3d at 1091.  Accordingly, the

Court must dismiss the plaintiff's Title VII discrimination claim.

### 2. Whether the Plaintiff Has Stated a Claim for a Hostile Work Environment Under Title VII

The Court next addresses the plaintiff's hostile work environment claim.  The defendant

asserts that the "[p]laintiff's hostile work environment claim fails because he does not allege

facts demonstrating that his employer subjected him to discriminatory intimidation, ridicule, and

insult that is sufficiently severe or pervasive to alter the conditions of his employment and create

an abusive working environment or any facts demonstrating that his treatment had anything to do

with his protected statuses."  Def.'s Mot. at 5–6.  In response, the plaintiff argues that he "has

plead sufficient supporting facts to illustrate a[ hostile work] environment that goes beyond

ordinary workplace circumstances."  Pl.'s Opp'n at 19.

---

[2] The plaintiff asks the Court to consider additional allegations raised in his EEOC appellate brief and his opposition to the defendant's motion to dismiss.  Specifically, in those filings, the plaintiff alleged that "favoritism was shown toward" "Bradley Maguire, a [white younger male,] who was hired after [the plaintiff]," Compl., Ex. 1 (EEOC Appellate Brief) at 29, as demonstrated by the fact that Maguire was allegedly left "in charge" on several occasions when the plaintiff's supervisor was away, id., Ex. 1 (EEOC Appellate Brief) at 29, and was included "in the decision making for new hires[,]" id., Ex. 1 (EEOC Appellate Brief) at 29.  In other words, the plaintiff seeks to introduce additional information, which was not included in his initial EEO Complaint.

Given that these allegations were not included in the plaintiff's initial EEO Complaint, they could not have been exhausted and, accordingly, should not be considered here.  However, even if the Court were to consider these additional allegations, the plaintiff's Title VII discrimination claim would remain unavailing.  See Achagzai v. Broad. Bd. of Governors, 170 F. Supp. 3d 164, 174 (D.D.C. 2016) ("[T]he D.C. Circuit has held in unequivocal terms that '[ ] Title VII . . . [does not] incorporate[] a jurisdictional exhaustion requirement.'" (quoting Menominee Indian Tribe of Wis. v. United States, 614 F.3d 519, 527 (D.C. Cir. 2010))).  More specifically, for the plaintiff to show that he is similarly situated to another employee, he "must [ ] demonstrate that 'all of the relevant aspects of [his] employment situation were nearly identical to those of the [other]' employee."  Burley v. Nat'l Passenger Rail Corp., 801 F.3d 290, 301 (D.C. Cir. 2015) (second and third alterations in original) (quoting Neuren v. Adduci, Mastriani, Meeks & Schill, 43 F.3d 1507, 1514 (D.C. Cir. 1995)).  "While a plaintiff is not required to proffer evidence of similarly situated individuals at the motion to dismiss stage, the [C]ourt still must determine whether, based on [the] plaintiff's allegations in the complaint, it is plausible that a jury could ultimately determine that the comparators are similarly situated."  Harris, 2022 WL 3452316, at *5 (internal quotation marks omitted) (quoting Vaher v. Town of Orangetown, 916 F. Supp. 2d 404, 434 (S.D.N.Y. 2013)).  Here, the plaintiff's Complaint does not inform the Court of his "putative comparator's job[] [or] job duties," nor does it provide the Court any reason to believe that any "relevant aspect[] of [the plaintiff's] employment situation were nearly identical to those of [Maguire]."  Burley, 801 F.3d at 301 (quotation marks omitted) (quoting Holbrook v. Reno, 196 F.3d 255, 261 (D.C. Cir. 1999)).  Therefore, the "plaintiff's assertion that [he] is similarly situated to [Maguire] . . . is just a legal conclusion—and a legal conclusion is never enough."  Harris, 2022 WL 3452316, at *6 (omission in original).

"A hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117 (2002) (quoting 42 U.S.C. § 2000e–5(e)(1)).  "To prevail on [a hostile work environment] claim, a plaintiff must show that his employer subjected him to 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Baloch, 550 F.3d at 1201 (quoting Harris, 510 U.S. at 21).  "In determining whether an actionable hostile work environment claim exists, [courts] look to 'all the circumstances,' including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Nat'l R.R. Passenger Corp., 536 U.S. at 116 (quoting Harris, 510 U.S. at 23).

The Court concludes that the plaintiff's hostile work environment claim fails for two reasons.  First, the alleged misconduct was not "sufficiently severe or pervasive [enough] to alter the conditions of the victim's employment and create an abusive working environment." Baloch, 550 F.3d at 1201 (quoting Harris, 510 U.S. at 21).  The plaintiff "did not describe any offensive comments, jokes, slurs, epithets, physical assaults or threats, or the like." Carter v. Carson, 715 F. App'x 16, 17 (D.C. Cir. 2018).  Instead, he first complains about Gustafson's criticisms of his work performance, see Compl. ¶ 39, which is precisely the kind of "work-related action[] by supervisors" that "courts typically do not find . . . to be sufficient for a hostile work environment claim." Munro v. LaHood, 839 F. Supp. 2d 354, 366 (D.D.C. 2012); see also Williams v. Spencer, 883 F. Supp. 2d 165, 181 (D.D.C. 2012) (holding that, while the plaintiff's "work environment was hardly ideal and her relationship with her supervisor was strained," complaints

"based on a lack of communication with [one's] supervisor, the handling [] of sick leave, and an unsatisfactory performance evaluation" were "common workplace challenges [which] do not show an environment so pervaded with discriminatory abuse as to alter the conditions of [the] plaintiff's employment").

The plaintiff's allegations regarding Jefferson's conduct are similarly unavailing for several reasons.  First, the plaintiff provides no information regarding the content of the "postings" that Jefferson allegedly placed on her door.  See generally Compl., Ex. 1 (Initial EEOC Complaint of Employment Discrimination) at 12–13.  Accordingly, the Court cannot properly determine the "severity, [ ] offensiveness, [or] whether [the postings] interfere[d] with [the plaintiff's] work performance." Baloch, 550 F.3d at 1201.  Furthermore, Jackson's comments that the plaintiff references to support his hostile work environment claim are of the variety that routinely lead to dismissal by courts in this Circuit.  See, e.g., Badibanga v. Howard Univ. Hosp., 679 F. Supp. 2d 99, 103–04 (D.D.C. 2010) (dismissing plaintiff's hostile work environment claim where he alleged that he "receiv[ed] multiple disciplinary actions for things for which he was not responsible," was told that he would be "easy to replace" because "there were many Americans searching for a job," and "was placed on administrative leave due to a false accusation of misconduct"); Nurriddin v. Bolden, 674 F. Supp. 2d 64, 94 (D.D.C. 2009) (dismissing hostile work environment claim where "disparaging remarks, criticisms of [the plaintiff's] work, and other negative comments [did] not sufficiently demonstrate a significant level of offensiveness"); cf. Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998) ("Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." (internal quotation marks omitted) (quoting Harris, 510 U.S. at 21)).  Thus,

the plaintiff's claims merely reflect the "ordinary tribulations of the workplace" that courts routinely find to not be "actionable." Brooks v. Grundmann, 748 F.3d 1273, 1277–78 (D.C. Cir. 2014) (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998)).

The Court also notes that the plaintiff fails to show that any of the aforementioned conduct was rooted in racial animus. For example, even if the Court assumed arguendo that the failure to provide new work boots was sufficiently severe to alter the conditions of the plaintiff's workplace, it would still be insufficient to support a hostile work environment claim because the plaintiff fails to tie that event to his race. Given that "a plaintiff 'must always prove that the conduct at issue was not merely tinged with offensive . . . connotations, but actually constituted discrimina[tion] because of' the employee's protected status[,]" Wright v. Lynch, 196 F. Supp. 3d 76, 84 (D.D.C. 2016) (first and second alterations in original) (quoting Oncale, 523 U.S. at 81), the plaintiff's failure to do so here is fatal to his hostile work environment claim. Accordingly, the Court must dismiss the plaintiff's Title VII hostile work environment claim.

### 3. Whether the Plaintiff Has Stated a Claim for Retaliation Under Title VII

The Court next addresses the plaintiff's Title VII retaliation claim. The defendant contends that the plaintiff's retaliation claim fails because the plaintiff "has not plausibly alleged that he engaged in protected activity." Def.'s Mot. at 22. Furthermore, the defendant claims that the plaintiff "has not alleged that he suffered any materially adverse employment action" that is actionable under Title VII. Id. at 25. In response, the plaintiff asserts that the "[d]efendant's argument fails because [the p]laintiff satisfied his burden [to state a retaliation claim] by . . . denoting numerous instances [which are] set forth in his [C]omplaint and attach[ing] exhibits that have occurred over the course of his employment." Pl.'s Opp'n at 21.

Under Title VII's anti-retaliation provision,

> [i]t shall be an unlawful employment practice for an employer to discriminate against any of [its] employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing[.]

42 U.S.C. § 2000e-3(a).  The anti-retaliation provision seeks to "prevent employer interference with 'unfettered access' to Title VII's remedial mechanisms[,]" Burlington N. and Santa Fe Ry. v. White, 548 U.S. 53, 68 (2006) (quoting Robinson v. Shell Oil Co., 519 U.S. 337, 346 (1997)), and "protects an individual not from all retaliation, but from retaliation that produce[d] an injury or harm[,]" id. at 67.

To establish a claim for retaliation under Title VII, a plaintiff must show: "(1) that he engaged in statutorily protected activity; (2) that he suffered a materially adverse action by his employer; and (3) that a causal link connects the two."  Jones v. Bernanke, 557 F.3d 670, 677 (D.C. Cir. 2009).  In the retaliation context, "an adverse action is one that is 'harmful to the point that [the employer's action] could well dissuade a reasonable worker from making or supporting a charge of discrimination.'"  Harris, 2022 WL 3452316, at *11 (D.D.C. Aug. 18, 2022) (alteration in original) (quoting Burlington N. & Santa Fe Ry., 548 U.S. at 57).  The anti-retaliation provision of Title VII "is not expressly limited to actions affecting the terms, conditions, or privileges of employment." Chambers, 35 F.4th at 876.  "However, actionable retaliation claims are [still] limited to those where an employer causes material adversity, not trivial harms[.]"  Harris, 2022 WL 3452316, at *11 (first alteration in original) (internal quotation marks omitted) (quoting Wiley v. Glassman, 511 F.3d 151, 161 (D.C. Cir. 2007)).  The standard for judging harm is an objective one that "separate[s] significant from trivial harms." Burlington N. and Santa Fe Ry., 548 U.S. at 68.

As an initial matter, the Court notes that the plaintiff alleges he began engaging in

protected activity in October 2020, when he "sent numerous date-stamped email

correspondences to [management] regarding issues interfering with [his] ability to conduct his

job duties." [3]  Pl.'s Opp'n at 22; cf. Mansfield v. Billington, 432 F. Supp. 2d 64, 73 n.3 (D.D.C.

2006) ("Because Title VII protects informal complaints such as letters, the plaintiff has stated a

claim for retaliation under Title VII.").  However, the plaintiff's allegations regarding (1) the

delay in receiving his work boots, which were ordered in May 2020, and (2) Jackson's

September 28, 2020 statements regarding the delay of the plaintiff's work boots "took place prior

to the time [he] first engaged in [protected] activity"—viz., October 2020.  Payne v. Salazar, 899

F. Supp. 2d 42, 53 (D.D.C. 2012).  Accordingly, the plaintiff "cannot base [his] retaliation claim

on [these] events[, as they] took place prior to the time [he] first engaged in [protected] activity."

Id.; see Lewis v. District of Columbia, 653 F. Supp. 2d 64, 79 (D.D.C. 2009) ("The fact that the

allegedly retaliatory actions preceded the protected activity precludes a determination that the

protected activity caused the defendant to retaliate against the plaintiff.").

---

[3] The plaintiff also alleges that he earlier engaged in protected activity "on April 24, 2018, [when] Agency employees, including the [p]laintiff, spoke out in [the d]efendant's Town Hall Meeting to address their belief that Human Resources Officer, Lisa Wilson, fostered a hostile work environment."  Pl.'s Opp'n at 21.  However, even assuming arguendo that this conduct constituted protected activity under Title VII, the alleged adverse actions in this matter occurred over two years after this alleged incident.  "To establish a causal connection between the engagement in a protected activity and the retaliatory action—in the absence of direct evidence—a plaintiff may show 'that the employer had knowledge of the employee's protected activity, and that the . . . [retaliatory] personnel action took place shortly after that activity.'"  Doe 1 v. George Wash. Univ., 369 F. Supp. 3d 49, 73 (D.D.C. 2019) (RBW) (quoting Cones v. Shalala, 199 F.3d 512, 521 (D.C. Cir. 2000)).  And, "[f]or purposes of establishing a prima facie case of retaliation, 'temporal proximity can indeed support an inference of causation, but only where the two events are very close in time.'"  Hamilton v. Geithner, 666 F.3d 1344, 1357 (D.C. Cir. 2012) (quoting Woodruff v. Peters, 482 F.3d 521, 529 (D.C. Cir. 2007)); see also Singletary v. District of Columbia, 351 F.3d 519, 525 (D.C. Cir. 2003) (holding that "a close temporal relationship may alone establish the required causal connection" for retaliation claims).  Furthermore, "[a]lthough 'neither the Supreme Court nor [ ] this Circuit has established a bright-line three-month rule,' this Circuit has found that such a gap between the protected activity and the adverse employment action negates the temporal proximity needed to prove causation[.]"  Doe 1, 369 F. Supp. 3d at 73–74 (internal citation omitted) (quoting Hamilton, 666 F.3d at 1357–58).  Accordingly, the Court concludes that the time between the plaintiff's alleged 2018 protected activity and his alleged adverse actions—which did not occur until May 2020—fails to support an inference of retaliation because the temporal gap is too great.

The remaining incidents alleged by the plaintiff are insufficiently severe to rise to the level of an "adverse action."  Indeed, "[y]elling, rude comments, disparaging remarks, and statements that embarrass a claimant in front of coworkers are, even though uncivil and objectionable, not actionable bases for [a] Title VII retaliation claim[]." Harris, 2022 WL 3452316, at *11.  Thus, courts in this Circuit have repeatedly held incidents like the ones at issue here are not actionable to state a Title VII retaliation claim. See, e.g., Baloch, 550 F.3d at 1199 ("[S]poradic verbal altercations or disagreements do not qualify as adverse actions for purposes of retaliation claims."); Howard v. Kerry, 85 F. Supp. 3d 428, 435 (D.D.C. 2015) (dismissing Title VII retaliation claim in part because a supervisor's yelling "in an intimidating fashion" did not rise to the level of adverse action); Bonnette v. Shinseki, 907 F. Supp. 2d 54, 70 (D.D.C. 2012) (finding that "oral reprimand," "public embarrassment," "micromanage[ment]," and other "purely subjective injuries or disagreements about management policies and decisions" did not constitute materially adverse actions); Koch v. Schapiro, 699 F. Supp. 2d 3, 14 (D.D.C. 2010) (dismissing Title VII retaliation claims premised on a supervisor's episode of yelling at the plaintiff).  In other words, the plaintiff's allegations regarding (1) Jefferson's hostile postings, (2) Gustafson's comments telling the plaintiff to speed up and that he didn't deserve to be paid, and (3) Gustafson's email criticizing the plaintiff's work performance, are no different from the "[y]elling, rude comments, disparaging remarks, and [embarrassing] statements[,]" Harris, 2022 WL 3452316, at *11, that courts in this Circuit have deemed insufficient to state a Title VII retaliation claim.  Accordingly, the Court must dismiss the plaintiff's Title VII retaliation claim.

**C.     Whether the Plaintiff Has Stated an ADEA Claim**

In his EEO complaint, the plaintiff alleged the same five instances of discrimination and retaliation discussed supra Section III.B, to support his ADEA claim.  See Compl., Ex. 1 (Initial

EEOC Complaint of Employment Discrimination) at 12.  More specifically, the plaintiff alleges

that these "tangible adverse employment actions" constitute the basis for his ADEA

discrimination and retaliation claims.  <u>See generally</u> Compl.  The Court will examine each claim

in turn.

      **1.**   **Whether the Plaintiff Has Stated a Claim for Discrimination Under the ADEA**

      The defendant contends that the plaintiff's "age discrimination claim[] also fail[s]

because there is no basis upon which to conclude that any action was taken against him on the

basis of [his] age."  Def.'s Mot. at 11.  More specifically, the defendant claims that "there is

nothing in the Complaint from which one could conclude that any of the actions [the p]laintiff

challenges had any connection with [the p]laintiff's . . . age."  <u>Id.</u>  As otherwise alleged, the

plaintiff argues that the defendant "overlooks [that the p]laintiff properly asserted as an African

American, sixty-five-year-old male, [that] he has been subjected to disparate treatment by being

undesired [as compared to] members of a non-protected class."  Pl.'s Opp'n at 17.

      The ADEA "makes it unlawful for an employer, including [the federal government], 'to

fail or refuse to hire or to discharge any individual or otherwise discriminate against any

individual . . . because of such individual's age.'"  <u>Kimel v. Fla. Bd. of Regents</u>, 528 U.S. 62, 66

(2000) (alteration in original) (quoting 29 U.S.C. § 623(a)(1)).  "Courts traditionally apply the

same approach to age-discrimination claims under the ADEA as that applied to gender or race

claims under Title VII[.]"  <u>Allard v. Holder</u>, 840 F. Supp. 2d 269, 274 (D.D.C. 2012).  "Under

the ADEA, two elements are required for an employment discrimination claim: (1) the plaintiff

suffered an adverse employment action (2) because of the employee's age."  <u>Id.</u>

      Here, even assuming <u>arguendo</u> that the plaintiff suffered an adverse employment action,

the plaintiff's ADEA discrimination claim still fails because he does not allege facts which

support an inference that the alleged discrimination was "because of [his] age." Id.  The crux of

the plaintiff's ADEA claim relies upon Gustafson's email, in which Gustafson stated:

> Guys we all have a job to do.  I get instructions just like you do so don't get upset
> when I ask you to do something[.]  [W]e are here to work that's it.  I have been
> hanging drywall, finishing drywall, painting, and more since I was a teenager[.]  I
> am now 47 years of age.  I know my job, I know how to get things done correctly,
> I am capable of getting things done quickly, and I know how long things should
> take to get it done.

Compl., Ex. 1 (Email from Gustafson, sent on April 9, 2021) at 18 (emphasis added).  The

plaintiff alleges that this email demonstrates Gustafson's discriminatory motive, as he "alluded

to [the plaintiff's] competence by comparing his age" to the plaintiff's.  Pl.'s Opp'n at 16.

However, as the defendant correctly notes, the "clear meaning of this [email] was to convey the

supervisor's own decades of experience in the [profession]," rather than serving as some kind of

"deriding statement against older employees."  Def's Mot. at 11–12; see also Hettinga, 677 F.3d

at 476 (holding that a court need not "accept legal conclusions cast as factual allegations[,]" or

"inferences drawn by [the] plaintiff if those inferences are not supported by the facts set out in

the complaint").  Furthermore, Gustafson's email was sent to three employees—Bradley

Maguire, Jerome Cecil, and the plaintiff—which undercuts the plaintiff's assertion that the email

was targeted at him.  See Compl., Ex. 1 (Email from Gustafson) at 18.

The remainder of the incidents alleged by the plaintiff are similarly insufficient to state a

discrimination claim.  As with his Title VII discrimination claim, the plaintiff fails to connect

any of the remaining incidents to his age.  Indeed, "[t]here simply are no facts to support a

plausible inference that [the p]laintiff's supervisors [or co-workers] were motivated by age-based

animus in any of their dealings with h[im].  With that link missing, [the p]laintiff's age

discrimination claim cannot stand[.]"  Harris, 2022 WL 3452316, at *9.  In other words, the

plaintiff "has not pled a single fact that would give rise to a plausible inference that . . . [any of

the purported adverse actions were] motivated by h[is] age." Yee v. Garland, No. 21-cv-1185

(ABJ), 2022 WL 2046112, at *10 (D.D.C. June 7, 2022).  Accordingly, the Court must dismiss

the plaintiff's ADEA discrimination claim.

**2.  Whether the Plaintiff Has Stated a Claim for Retaliation Under the ADEA**

The Court next addresses the plaintiff's ADEA retaliation claim.  As otherwise alleged,

the defendant contends that the plaintiff's retaliation claim fails because the plaintiff "has not

plausibly alleged that he engaged in protected activity."  Def.'s Mot. at 22.  Furthermore, the

defendant claims that the plaintiff "has not alleged that he suffered any materially adverse

employment action" that is actionable under the ADEA.  Id. at 25.  In response, the plaintiff

asserts that the "[d]efendant's argument fails because [the p]laintiff satisfied his burden [to state

a retaliation claim] by . . . denoting numerous instances [which are] set forth in his [C]omplaint

and attach[ing] exhibits that have occurred over the course of his employment."  Pl.'s Opp'n at

21.

As noted earlier, "[t]he anti-retaliation provision of the ADEA, 29 U.S.C. § 623(d),

which closely tracks the cognate provision of Title VII, makes it 'unlawful . . . to discriminate

against any [employee] . . . because such individual . . . has opposed any practice made unlawful

by this section.'"  Rochon v. Gonzales, 438 F.3d 1211, 1217 (D.C. Cir. 2006).  "To state a claim

for retaliation under the ADEA, a plaintiff must allege that '(1) he engaged in statutorily

protected activity; (2) that he suffered a materially adverse action by his employer; and (3) a

causal link connects the two.'"  Golden v. Mgmt. & Training Corp., 319 F. Supp. 3d 358, 370

(D.D.C. 2018) (quoting Jones, 557 F.3d at 677).  As with Title VII retaliation claims, "actionable

adverse actions in the [ADEA] retaliation context are 'not limited to discriminatory actions that

affect the terms and conditions of employment' and may extend to harms that are not workplace-

related or employment-related so long as 'a reasonable employee would have found the

challenged action materially adverse.'"  <u>Koch</u>, 699 F. Supp. 2d at 13 (quoting <u>Burlington N. &</u>

<u>Santa Fe Ry.</u>, 548 U.S. at 64, 70).

     For the reasons already discussed when considering the plaintiff's Title VII retaliation

claim, <u>see</u> <u>supra</u> Section III.B.3, the Court concludes that the plaintiff has not stated a claim for

retaliation under the ADEA.  Accordingly, the Court must dismiss the plaintiff's ADEA

retaliation claim.

**D.      Whether the Plaintiff Has a Private Right of Action Under 42 U.S.C. § 1981a**

     The plaintiff alleges a violation of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, in

Counts VI and VII of his Complaint.  However, Section 1981a "does not provide [the plaintiff]

an[] independent cause of action for which suit can be brought."  <u>Wilson v. U.S. Dep't of</u>

<u>Transp.</u>, 759 F. Supp. 2d 55, 63 (D.D.C. 2011).  Instead, it simply "addresses remedies and

procedures in Title VII actions."  <u>Id.</u>  Accordingly, "Count[s] VI [and VII] will be dismissed

under Rule 12(b)(6)."  <u>Id.</u>

**E.      Whether Sovereign Immunity Bars DCHRA Claims Against the Federal
         Government**

     Finally, the plaintiff alleges a violation of the DCHRA, D.C. Code § 2-1401.01, in Count

VIII of his Complaint.  However, the plaintiff's "DCHRA claim does not require extended

discussion.  Sovereign immunity bars DCHRA claims against the federal government."  <u>Marcus</u>

<u>v. Geithner</u>, 813 F. Supp. 2d 11, 17 (D.D.C. 2011).  This is because "[t]he D.C. Council, not

Congress, enacted the DCHRA, and there is no federal statute that evinces Congress's intent to

waive the United States' immunity from suit under the DCHRA."  <u>Id.</u>  Accordingly, the Court

must dismiss the plaintiff's DCHRA claim.

## IV.    CONCLUSION

For the foregoing reasons, the Court concludes that it must grant the defendant's motion to dismiss.

**SO ORDERED** this 19th day of August, 2024.[4]

REGGIE B. WALTON
United States District Judge

---

[4] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.